ANDREW OELZ (SBN 216885)
aoelz@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars
Suite 600
Los Angeles, CA 90067-6022
Telephone: 310.229.1000
Facsimile: 310.229.1001

DAVID H. QUIGLEY (*pro hac vice* forthcoming)
STACEY H. MITCHELL (*pro hac vice* forthcoming)
STANLEY E. WOODWARD, JR. (*pro hac vice* forthcoming)
dquigley@akingump.com
shmitchell@akingump.com
stanley.woodward@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Aveue, NW
Washington, DC 20036
Telephone: 202.887.4000
Facsimile: 202.887.4288

Attorneys for Plaintiff
OCEANA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OCEANA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>WILBUR ROSS, in his official capacity as Secretary of the United States Department of Commerce; NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION; and NATIONAL MARINE FISHERIES SERVICE,<br><br>Defendants. | Case No. 2:17-CV-05146<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This action arises following the Secretary of Commerce's (the "Secretary") improper withdrawal of a proposed regulation that would have established strict limits on the bycatch of marine mammals and other species in the California drift gillnet fishery for swordfish and thresher sharks. Specifically, Plaintiff Oceana, Inc. ("Oceana") challenges the Secretary's June 12, 2017 withdrawal of a regulation transmitted by the Pacific Management Council ("Council"), published in the Federal Register as a proposed rule, and subjected to public comment.

## PARTIES

2. Plaintiff, Oceana, Inc., is a non-profit international advocacy organization dedicated to protecting and restoring the world's oceans through policy, advocacy, science, law, and public education. Oceana has more than 600,000 members worldwide, including 89,460 members in California. Oceana is organized under the laws of the District of Columbia, and maintains its headquarters in Washington, DC. It has offices or staff in eleven states, including Monterey, California. Oceana devotes considerable resources to studying and communicating the ecological and economic importance of sustainable fisheries management in the California Current Large Marine Ecosystem off the U.S. West Coast. Curtailing the mortality of protected marine mammals and sea turtles, such as those species that would have directly benefited from the regulation withdrawn by the Secretary, is a central focus of Oceana's work.

3. Defendant, Wilbur Ross, is the Secretary of the United States Department of Commerce. He is sued in his official capacity as chief officer of the federal department charged by the United States Congress with managing the United States marine fisheries.

4. Defendant, National Oceanic and Atmospheric Administration ("NOAA"), is an agency of the United States Department of Commerce with supervisory responsibility for the National Marine Fisheries Service. The Secretary of Commerce has delegated responsibility for managing United States marine fisheries to NOAA,

which in turn has sub-delegated that responsibility to the National Marine Fisheries Service.

5. Defendant, National Marine Fisheries Service ("Fisheries Service"), is an agency of the United States Department of Commerce that has been delegated the responsibility to manage United States marine fisheries through fishery management plans, plan amendments, and regulations implementing those plans and plan amendments. The Fisheries Service is the United States government agency with primary responsibility for managing marine fisheries.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, which authorizes a court to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law [or] in excess of statutory jurisdiction . . .," and 5 U.S.C. § 704, which provides a right to judicial review of all "final agency action for which there is no other adequate remedy in a court."

7. This Court also has jurisdiction over this matter pursuant to the Magnuson-Stevens Fishery Conservation and Management Act ("The Magnuson–Stevens Act"), 16 U.S.C. § 1861(d), which provides that "[t]he district courts of the United States shall have exclusive jurisdiction over any case or controversy arising under [the Magnuson-Stevens Act]."

8. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under . . . laws . . . of the United States" and 28 U.S.C. § 1361, which grants the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

9. Venue is proper in this district court pursuant to 28 U.S.C. § 1391(e).

10. The Court may issue a declaratory judgment in this case pursuant to 28 U.S.C. §§ 2201-02, and may grant relief pursuant to the Magnuson-Stevens Act, 16 U.S.C. §§ 1861(d) and 1855(f), and the Administrative Procedure Act, 5 U.S.C. § 706.

## LEGAL BACKGROUND

11. The Magnuson-Stevens Act, 16 U.S.C. §§ 1801-1884, establishes the primary regime for managing fisheries in U.S. federal waters. The Magnuson-Stevens Act creates a unique system whereby individual councils made up of fishery constituents develop fishery management plans, amendments, and implementing regulations for fisheries within their geographic purview.

12. The Magnuson-Stevens Act provides, *inter alia*, for a streamlined process for the approval of regulations implementing fishery management plans.

13. The streamlined regulatory approval process emphasizes the individual decision-making authority of the fishery management councils and limits the actions the Secretary may take in response to council decisions.

14. Specifically, upon transmittal of a proposed regulation to the Secretary, the Secretary must determine whether the proposed regulation is "consistent with the fishery management plan, plan amendment, [the other provisions of the Magnuson-Stevens Act], and other applicable law." 16 U.S.C. § 1854(b)(1).

15. If the determination is negative, the Secretary is limited to notifying the proposing council of identified "inconsistencies and provide recommendations on revisions that would make the proposed regulation[] consistent." 16 U.S.C. § 1854(b)(1)(B).

16. If the determination is positive, the Secretary must publish the proposed regulation in the Federal Register for comment. 16 U.S.C. § 1854(b)(1)(A).

17. Within thirty (30) days of the conclusion of the comment period, the Secretary must promulgate the final regulation and must "consult with the [proposing council] before making any revisions to the proposed regulation[], and must publish in

the Federal Register an explanation of any differences between the proposed and final regulation[].” 16 U.S.C. § 1854(b)(3).

**PROCEDURAL AND FACTUAL BACKGROUND**

18. The California Current is a migratory destination for large numbers of animals that come to feed in these rich productive waters, which include the waters off the coast of California.

19. The primary ports for the California-based drift gillnet swordfish fishery are located in the Santa Barbara, Los Angeles, and San Diego areas.

20. There are fewer than 80 existing permits for the California-based drift gillnet swordfish fishery.

21. Of those vessels permitted to fish, approximately 20 are active in the fishery.

22. In pursuit of swordfish, the California-based drift gillnet fishery uses mile-long nets that are set nearly 200 feet deep at night.

23. These drift gillnets are inherently unselective and have a long track record of catching, *inter alia*, whales and sea turtles.

24. Between 2004 and 2017, the drift gillnet swordfish fishery discarded 61% of all animals caught.

25. Between 2001 and 2015, the fishery caught 754 dolphins, 507 seals and sea lions, 112 seabirds, 53 whales, and 35 sea turtles.

26. In March 2012, to mitigate bycatch impacts, the Council requested that the Fisheries Service determine the next steps for establishing hard caps for sea turtles in the drift gillnet fishery.

27. In 2014, the Council took action to develop a comprehensive plan to transition the drift gillnet fishery to a fishery utilizing more environmentally and economically sustainable gear types.

28. In or about September 2014, the Council adopted ranges of alternatives for high priority protected species hard caps, finfish bycatch caps, and enhanced monitoring

for the drift gillnet fishery. The Council identified a preliminary preferred alternative that included annual hard caps for fin, humpback and sperm whales, leatherback, loggerhead, olive ridley, green sea turtles, and short-finned pilot whales.

29. In or about November 2014, the Council expressed its polity intent to pursue management measures designed to improve the target performance of the fishery, while encouraging alternative gears.

30. In or about June 2015, the Council adopted additional alternatives and directed the Highly Migratory Species Management Team to analyze them for final Council action in September 2015.

31. In or about September 2015, the Council took final action to adopt final preferred alternatives for management of the drift gillnet fishery, including hard caps for high priority protected species. The final preferred alternative included annual hard caps for fin, humpback and sperm whales, leatherback, loggerhead, olive ridley, and green sea turtles, short-finned pilot whales, and common bottlenose dolphin.

32. On or about September 23, 2016, the Council transmitted to the Secretary a proposed regulation requiring hard caps on the bycatch of five marine mammal species and four sea turtle species within the California-based drift gillnet fishery.

33. The regulation would have required the immediate closure of the fishery if a hard cap were met or exceeded for any one of the nine protected species. The length of such closure would have depended on when, during a rolling two-year period, the hard cap was reached.

34. Strict bycatch limits, like those in the proposed regulation can benefit protected species. Among the benefits from protections like these are the incentives to change behavior in the fleet and to switch to clean fishing methods, such as deep-set buoy or harpoon gear, which have minimal interactions with protected species. These indirect benefits were identified by Oceana and others during the process that led to the proposed regulation.

35. On or about October 13, 2016, the Secretary published the regulation in the Federal Register for a public comment period. 81 Fed. Reg. 70,660.

36. In so doing, the Secretary determined that the proposed rule was consistent with the fishery management plan, other provisions of the Magnuson-Stevens Act, and other applicable law. *Id.*

37. Following the close of the public comment period on November 28, 2016, the Secretary did not, within thirty (30) days, promulgate a final regulation. 81 Fed. Reg. 84,546.

38. Rather, on or about June 12, 2017, the Secretary decided the proposed regulation was not warranted and withdrew it. 82 Fed. Reg. 26,902.

39. The Secretary did not determine that the proposed regulation was inconsistent with the fishery management plan, other provisions of the Magnuson-Stevens Act, or other applicable law.

40. The agency's Regional Administrator's correspondence to the Chairman of the Pacific Fishery Management Council claimed that drift gillnet participants would experience "significant adverse economic effects" that were not previously identified and that the proposed regulation would offer little new protection to marine mammals and sea turtles.

41. The Secretary's withdrawal of the proposed regulation has caused irreparable harm to Oceana and its members that will continue absent this Court's intervention.

42. Specifically, Oceana's members use and enjoy the oceans for numerous activities, including fishing, wildlife observation, scuba diving, snorkeling, boating, swimming, beach walking, research, and study. Oceana's members value and depend upon a healthy marine environment for these activities.

43. Oceana's members also consume seafood caught in the California Current Ecosystem.

44. Oceana's members are concerned about and directly affected by environmental injury caused by unsustainable fishing in the U.S. West Coast fisheries resulting in the unnecessary killing and depletion of special marine animal populations.

45. Injuries to Oceana's members include injuries to their recreational and commercial use of fish populations, as well their interest in healthy populations of whales and sea turtles.

46. The above-described aesthetic, conservation, recreational, commercial, scientific, educational, and other interests of Oceana and its members have been, are being, and, unless the relief prayed for in this Complaint is granted, will continue to be adversely affected and irreparably injured by the Secretary's improper withdrawal of the proposed regulation.

## FIRST CLAIM FOR RELIEF

### Violation of the Administrative Procedure Act (5 U.S.C. § 706)

47. Oceana re-alleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

48. The Administrative Procedure Act requires that the Secretary not take any action, make any findings, or reach any conclusions that are, *inter alia*, "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law . . . ."

49. The Secretary violated the Administrative Procedure Act when it withdrew the Council's proposed regulation implementing hard caps on the bycatch of five marine mammal species and four sea turtle species.

## SECOND CLAIM FOR RELIEF

### Violation of the Administrative Procedure Act (5 U.S.C. § 706)

50. Oceana re-alleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

51. The Administrative Procedure Act requires that the Secretary not take any action, make any findings, or reach any conclusions that are *inter alia*, "in excess of statutory jurisdiction, authority, or limitations . . . ."

52. The Secretary violated the Administrative Procedure Act when it withdrew the Council's proposed regulation implementing hard caps on the bycatch of five marine mammal species and four sea turtle species.

## **THIRD CLAIM FOR RELIEF**

### **Violation of the Magnuson-Stevens Act (16 U.S.C. § 1854)**

53. Plaintiff re-alleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

54. The Magnuson-Stevens Act prescribes a process by which the Secretary must promulgate regulations transmitted by fishery management councils.

55. The Secretary violated the Magnuson-Stevens Act when it withdrew the Council's proposed regulation implementing hard caps on the bycatch of five marine mammal species and four sea turtle species.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

- Declare that Defendants have violated the Administrative Procedure Act and/or the Magnuson-Stevens Act when they withdrew the Council's transmitted regulation;
- Order the Secretary to promulgate the Council's transmitted regulation in accordance with the Magnuson-Stevens Act or otherwise Order the Secretary to act in conformance with the Magnuson-Stevens Act;
- Maintain jurisdiction over this action until Defendants are in compliance with the Administrative Procedure Act, the Magnuson-Stevens Act, and all Orders of this Court;

- Award Oceana its costs of litigation as well as reasonable attorney and/or expert witness fees; and/or
- Grant Plaintiff such further and additional relief as the Court may deem just and proper.

Dated: July 12, 2017 AKIN GUMP STRAUSS HAUER & FELD LLP

By *<u>/s/ Andrew Oelz</u>*
Andrew Oelz
David H. Quigley (*pro hac vice forthcoming)*
Stacey H. Mitchell (*pro hac vice forthcoming)*
Stanley E. Woodward, Jr. (*pro hac vice forthcoming)*

Attorneys for Plaintiff
OCEANA, INC.